IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EWELINEB FASHION LLC, | |
| Plaintiff, | |
| v. | Case No. 18-cv-8102 |
| L. FRANCIS CISSNA[1], Director USCIS, *et al*, | Judge Mary M. Rowland |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on the parties' cross motions for summary judgment [51] and [56]. Plaintiff EwelineB Fashion LLC ("EwelineB"), brings this case pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, challenging the denial of EwelineB's Petition for Nonimmigrant Worker seeking E-2 classification on behalf of Ms. Beata Czajkowska ("E-2 Petition"). EwelineB, a fashion design company, applied for Ms. Czajkowska, a citizen of Poland, to receive an E-2 treaty investor visa. The United States Citizenship and Immigration Services ("USCIS") denied EwelineB's E-2 Petition on August 30, 2019.

EwelineB requests that the Court reverse or remand USCIS's denial of its petition. Defendants counter that the petition was properly denied because EwelineB failed to satisfy the regulatory requirements. For the reasons stated below, Plaintiff's motion [51] is denied and Defendants' motion [56] is granted.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court substitutes Tracy Renaud, the Senior Official Performing the Duties of the Director, U.S. Citizenship and Immigration Services as of January 20, 2021.

1

## I. Legal Standard

In reviewing the agency decision on appeal, the facts are drawn from the certified administrative record (here, Dkts. 46-48 ("A.R.")). 5 U.S.C. § 706; *see Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849, 856 (7th Cir. 2009) (under the APA, review of agency's decision limited to the administrative record). "The APA requires that an agency's decision be set aside only if it is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence in the case, or not in accordance with law." *Fliger v. Nielsen*, 743 F. App'x 684, 687 (7th Cir. 2018) (citation and quotations omitted). The agency decision must stand if a "reasonable mind could find adequate support for the decision." *Id*. at 688 (citation omitted). *See also Ogbolumani v. Napolitano*, 557 F.3d 729, 733 (7th Cir. 2009) (challenge under APA "high hurdle"— "[i]t's not enough that we might have reached a different conclusion; so long as a reasonable mind could find adequate support for the decision, it must stand.").

While an agency must give a satisfactory explanation for its decision, "[t]he scope of review…is narrow and a court is not to substitute its judgment for that of the agency.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "Instead of the usual summary judgment standard, the court must determine as a matter of law whether the evidence in the administrative record permitted the agency to make [] the decision it did." *Doe v. United States Immigration & Citizenship Serv.*, 2017 WL 770998, at *4 (N.D. Ill. Feb. 28, 2017) (citation omitted). The Court gives deference to the agency decision. *Id*. Indeed the agency decision "'need not be

compelling, or even convincing, to be sufficient;' that the decision is reasoned is sufficient." *Ghaly v. INS,* 48 F.3d 1426, 1431 (7th Cir. 1995) (citation omitted).

## II. Background

### A. The E-2 Treaty Investor Visa

Under the Immigration and Nationality Act ("INA"), a nonimmigrant foreign worker coming temporarily to the U.S. may seek status as an E-2 treaty investor. 8 U.S.C. § 1101(a)(15)(E)(ii). The regulations require that the applicant establish that he or she "[h]as invested or is actively in the process of investing a substantial amount of capital in a bona fide enterprise in the United States"; seeks "entry solely to develop and direct the enterprise"; and intends to depart the U.S. when the treaty investor status expires or is terminated. 8 C.F.R. § 214.2(e)(2).

The burden is on the applicant to establish eligibility for treaty investor status. *See Kun Young Kim v. Dist. Dir. of U. S. Immigration & Naturalization Serv.*, 586 F.2d 713, 716 (9th Cir. 1978) (citing *Matter of Ahmad*, 15 I. & N. Dec. 81 (BIA 1974)); *see also Doe v. McAleenan*, 929 F.3d 478, 481 (7th Cir. 2019) (burden on applicant to show all eligibility criteria satisfied by a preponderance of the evidence); 8 U.S.C. § 1361.[2]

### B. Background Facts

EwelineB Fashion is a fashion design company established on November 12, 2014 in Illinois. It operated offices in Chicago, and later, in Barrington, IL and Beverly

---

[2] As one court noted, "E–2 visas are coveted because they allow investors to reside in the United States for longer than other visas; even better, they are indefinitely renewable." *Tocara Investments v. Johnson*, 2017 WL 985644, at *1 (D. Nev. Mar. 14, 2017).

Hills, CA. (PSOF ¶1).[3] USCIS is the component of the Department of Homeland Security that is responsible for adjudicating EwelineB's E-2 Petition. *Id.* at ¶2. EwelineB sought E-2 status for Czajkowska as a Treaty Investor on December 27, 2017. *Id.* ¶5.

Czajkowska arrived in the U.S. in June 2017 as a B-1 nonimmigrant visitor for business and was authorized to stay until December 27, 2017. A.R. 589. EwelinaB Fashion, Ltd. ("EwelineB UK") was formed in the UK on October 13, 2011 as the successor to the same brand operated in Germany from 2008-2011. PSOF at ¶6. Czajkowska co-founded the UK entity, and owns 50% of the UK company. *Id.* EwelineB (the U.S. entity) was formed in November 2014, as a subsidiary of EwelineB UK, with the goal of developing its emerging U.S. market. *Id.* at ¶8.

Czajkowska is a citizen of Poland; she held a 50% ownership interest in EwelineB UK, and initially, 45% of EwelineB U.S. *Id.* at ¶¶9-10. EwelineB submitted evidence to USCIS of Ms. Czajkowska's job description as co-owner and Managing Director of the U.S. entity. *Id.* at ¶12. In the initial 2015 business plan provided to USCIS, EwelineB claimed that the enterprise was a fashion design company that would carry clothing and accessory items to be sold from its boutique location in Chicago, through other local boutique clothing stores, and through an online store. DSOF at ¶78.

---

[3] PSOF is Plaintiff's Statement of Facts (Dkt. 53). Defendants responded to Plaintiff's Statement at Dkt. 58. Defendants also filed a Statement of Additional Facts (¶¶75-84) in Dkt. 58 (abbreviated as DSOF). Plaintiff did not respond to Defendants' Additional Facts. Those facts (DSOF ¶¶75-84) are deemed admitted. *See e.g. Mack v. City of Chicago*, 2019 WL 1331786, at *5 (N.D. Ill. Mar. 25, 2019), aff'd, 788 F. App'x 396 (7th Cir. 2019).

4

## C. The USCIS Decisions

EwelineB submitted its initial petition on December 27, 2017. PSOF ¶19. That petition was denied for abandonment in April 2018. A.R. at 662. After USCIS denied EwelineB's motion to reopen, EwelineB filed the present case in this court. *See id.* at 606; Dkt. 1. In March 2019, USCIS reopened the underlying petition. PSOF at ¶45. USCIS issued a Notice of Intent to Deny ("NOID") on March 25, 2019, detailing the following deficiencies in the petition and evidence: (1) whether EwelineB Fashion LLC is a *bona fide* enterprise; (2) whether Czajkowska possessed the necessary control to develop and direct the company; and (3) whether EwelineB established the invested funds or assets were not obtained through criminal activity. *Id.* EwelineB responded to the NOID on May 2, 2019. *Id.* at ¶46.

On August 30, 2019, the USCIS denied the petition. *Id.* at ¶69; A.R. 589-605.[4] EwelineB filed its amended complaint in this case on November 25, 2019. (Dkt. 31).

## III. Analysis

EwelineB seeks review of USCIS's August 30, 2019 decision denying the E-2 Petition and change of status for Czajkowska. EwelineB claims that USCIS's basis for the denial was not supported by substantial evidence and was arbitrary and capricious. (Dkt. 52 at 5). Defendants argue that EwelineB failed to establish that it was a *bona fide* enterprise, that the treaty investment funds were obtained through lawful means, and that the petition should have been granted in the exercise of discretion. They further argue that the petition was properly denied because

---

[4] The parties agree that review of the USCIS decision in this Court is proper. *See* Defendants' Answer, Dkt. 37 at p. 3.

5

material changes occurred within the alleged enterprise and, consequently, to EwelineB's petition following the filing of the petition. (Dkt. 57 at 1-2).

### A. Bona Fide Enterprise

Under 8 C.F.R. §214.2(e)(13), a *bona fide* enterprise is defined as "a real, active, and operating commercial or entrepreneurial undertaking which produces services or goods for profit. The enterprise must meet applicable legal requirements for doing business in the particular jurisdiction in the United States." In finding EwelineB failed to establish that it was a *bona fide* enterprise, USCIS's August 2019 denial relied on: (1) the lack of business operation at the Illinois locations; (2) insufficient financial documentation; and (3) limited internet presence. A.R. 599-601.

First, EwelineB's E-2 petition explained the company's plan to establish locations in Illinois. A.R. 817-19 ("the company will operate in and around Chicago"). But the NOID noted that the Michigan Avenue location's lease was valid only until December 31, 2018, and during USCIS's February 2019 site visit, USCIS officers were informed that the lease was actually terminated earlier, on April 13, 2018. DSOF ¶75; A.R. at 624. As to the Barrington, Illinois location, the NOID noted that the property manager at the ICE House Mall stated that the store had not been open in several months and that the tenant was behind in rent. *Id.* at ¶76. USCIS officers also found the store closed and padlocked during normal business hours. *Id.* at ¶77. EwelineB does not dispute these facts. Instead it broadly argues that "hundreds of pages of the CAR" show it was a *bona fide* enterprise and generally refers to "leases." (Dkt. 52 at 23-24). This type of argument does not help the Court in evaluating the evidence or

EwelineB in meeting its high burden under the APA. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 898 (7th Cir. 2018) ("It has become axiomatic in this Circuit to remind parties in colorful terms that '[j]udges are not like pigs, hunting for truffles buried in' the record.") (citations omitted); *see also Ogbolumani*, 557 F.3d at 733.

In its reply brief, the company maintains that it explained to USCIS that the padlocking of the Barrington store was due to a "disgruntled, dangerous employee," Mr. Adam Jablonski (who was also a minority owner of the company). (Dkt. 59 at 4-5; PSOF ¶10). Even accepting EwelineB's characterization of Mr. Jablonski, the company does not explain how it met its burden to demonstrate it was a *bona fide* business under 8 C.F.R. §214.2. *See* 8 U.S.C. § 1361 (burden of proof on applicant to establish eligibility for visa). Addressing USCIS's observations that the store was padlocked and behind on rent, EwelineB argues, "[h]ow that equates to fraud is a not at all clear." (Dkt. 59 at 5). But EwelineB does not cite any authority for the proposition that USCIS, in evaluating whether EwelineB met its burden to show it was a *bona fide* business, was required to find fraud.

In addition, EwelineB argues it relocated from Chicago to California because of the disgruntled employee. As discussed below, USCIS found the relocation to be a material change to the E-2 Petition. EwelineB otherwise does not provide any reason for the Court to question the USCIS's assessment of the lack of business operations at the Chicago and Barrington locations, and the agency's conclusion that this factor showed EwelineB had not met its burden to show it was "a real, active, and operating

7

commercial or entrepreneurial" enterprise meeting the "legal requirements for doing business in the particular jurisdiction in the United States." 8 C.F.R. § 214.2(e)(13).[5]

Second, as to financial documentation, Defendants argue that the invoices EwelineB provided gave little detail about the services rendered and there was no documentation of the actual payments of these invoices in the bank account records provided. In the August 2019 decision, USCIS explained that EwelineB's sales figures identified in its 2018 business plan were not supported by any receipts in the record. A.R. at 601. It also noted that the only two pieces of objective evidence documenting EwelineB's relationship with fashion houses Gucci and Tom Ford did not amount to sufficient income to support a finding that EwelineB was a *bona fide* enterprise. *Id.* at 600. And as to bank account statements, USCIS found they lacked sufficient detail of incoming and outgoing funds and had only limited transactions from Illinois after June 2018. *Id.*

In response, EwelineB again broadly refers to documents including "paid invoices," "financial documents" and "photos." (Dkt. 52 at 25). EwelineB contends that "[e]verything [the government] claims the invoices lacked is in the record," while conceding that what is *not* in the record is "matching payments with the individual invoices." (Dkt. 59 at 4). EwelineB speculates that this "is likely because many deposits indicated on EwelineB's bank statements were via a credit card provider,

---

[5] EwelineB does not assert a "disgruntled employee" exception to the regulations governing the treaty investor visa.

not the customers directly." (*Id.*).⁶ Given the deferential standard of review to the agency's decision, EwelineB's *post-hoc* speculation about why the record did not contain evidence of matching payments to invoices does not show that it met its burden to establish it was a *bona fide* enterprise.

Finally, the E-2 Petition explained the company's detailed digital marketing and social media presence. But USCIS found that, as of August 27, 2019, the Instagram account had only 266 followers and the Facebook page had 488 "likes." DSOF at ¶84. It also appeared that the company did not offer a way to buy their designs on the EwelineB website. *Id.*; A.R. at 601. Other than objecting to the agency playing "social media expert" (Dkt. 52 at 24), EwelineB does not respond to these findings.

## B. Source of Funds

Under the regulations, the treaty investor's "investment" is the "placing of capital, including funds and other assets (which have not been obtained, directly or indirectly, though criminal activity)…" 8 C.F.R. § 214.2(e)(12). In its NOID, USCIS requested information about the source of $480,000 that EwelineB claimed had been invested in EwelineB Fashion, LLC. In response, Czajkowska provided an affidavit explaining various categories of funds making up the $480,000. (A.R. 71-72). But instead of substantiating these funds with records, Czajkowska stated generally that they were "all earned through legitimate business activities." (*Id.* ¶11)

Defendants also argue that the 2018 Business Plan EwelineB submitted states that Czajowska and Ewelina Barlak each provided $140,041 of their own "at-risk"

---

⁶ EwelineB relies on a 2018 Merchant Agreement with Bank of America (Dkt. 59 at 4, citing A.R. 223-90) but does not explain how this shows actual evidence of particular payments.

9

funds into the company, "for a total investment of $280,082." However EwelineB did not explain how the investment of Czajowska's personal funds fit into the overall investment figures, and did not provide proof that these funds were actually deposited into an account belonging to the U.S. company. EwelineB does not address Defendants' argument, either in its opening or reply brief, about the unsubstantiated $280,082.

Finally, EwelineB contends that USCIS acknowledged the "evidence of photographs" as support for its claimed $240,000 in finished goods inventory. A reasonable reading of the August 2019 decision, however, shows that the agency found that even with the photographs of garments, the *only* objective evidence, it was "impossible to determine what is included in this [finished goods inventory] list and whether it holds the value claimed." A.R. 602.

### C. Material Changes to Petition

USCIS found that EwelineB made material changes to its application and the basic characteristics of the enterprise after its initial filing. These significant, material changes were to its business location, business plan, and ownership structure.

As explained in *Matter of Izummi*, 22 I&N Dec. 169 (Assoc. Comm'r 1998), a petitioner may not make material changes to an application that has already been filed: "A petitioner must establish eligibility at the time of filing; a petition cannot be approved at a future date after the petitioner becomes eligible under a new set of facts. Therefore, a petitioner may not make material changes to a petition that has

10

already been filed in an effort to make an apparently deficient petition conform to Service requirements." *Id.* at 175 (citation omitted); *see e.g. Tingzi Wang v. United States Citizenship & Immigration Servs.*, 375 F. Supp. 3d 22, 37 (D.D.C. 2019) (USCIS "easily satisfied its minimal burden under the APA" in concluding that petitioner made material changes to petition).

As to the location change, EwelineB argues that its relocation from Illinois to California was warranted because of disgruntled employee, Mr. Jablonski (Dkt. 52 at 17). USCIS's August 2019 decision noted the many documents EwelineB submitted about Mr. Jablonski, and in the section analyzing the change of business location, specifically discussed EwelineB's explanation about Mr. Jablonski. Still USCIS concluded that the company's abandonment of its Illinois locations and relocation to California constituted material changes to the petition. Other than rehashing what EwelineB argued to the USCIS, EwelineB does not provide a reason for the Court to revisit the agency's finding that EwelineB did not establish eligibility for the treaty investor visa at the time of filing.

In addition to finding that the new California locations constituted material changes to the enterprise, USCIS concluded that the documentation submitted did not establish by a preponderance of the evidence that EwelineB was in fact conducting business out of any of the California addresses provided. The Beverly Hills "studio and showroom" was actually a residential rental property. No lease or other documentation was provided for this location and, importantly, no supporting

11

evidence was provided to show that any business was being conducted at that location.[7]

USCIS also found that EwelineB made several significant modifications to the company's business plan from the time of the initial filing of the E-2 petition. The agency noted significant change in the organizational structure. USCIS was concerned that EwelineB's response to the NOID indicated that it currently had three employees but no details were provided about where those employees work, whether they were located in Chicago or Los Angeles, or whether the work was to be performed remotely or on-site. A.R. 598. Other than focusing on the disgruntled ex-employee as a reason for the business changes, EwelineB does not address these reasons given by USCIS.

Finally USCIS cited significant changes to EwelineB's ownership structure. Under 8 C.F.R. § 214.2(e)(16), Czajkowska was required to:

> demonstrate that he or she does or will develop and direct the investment enterprise. Such an applicant must establish that he or she controls the enterprise by demonstrating ownership of at least 50 percent of the enterprise, by possessing operational control through a managerial position or other corporate device, or by other means.

USCIS found a number of inconsistencies and changes that occurred in the ownership structure to EwelineB. *See* A.R. 599. The July 2017 Amended Operating Agreement showed Czajkowska and Barlak owning 45 percent and Jablonski owning 10 percent. *Id.* By contrast the 2016 IRS Tax Form 1065 showed Czajkowska and

---

[7] EwelineB stresses that the record contains Oscar de la Renta invoices from its West Hollywood location. (Dkt. 52 at 19; A.R. at 451-53, 455-78). But again as the agency pointed out, there are no corresponding receipts or evidence of deposits in EwelineB's bank account.

Barlak each owning 50 percent of the company. *Id*. It was unclear to USCIS how or when this change occurred but the addition of Jablonski called into question Czajkowska's ability to develop and direct the company. *Id*. In response to the NOID, EwelineB explained that it had tried to buy back Jablonski's shares. The totality of the evidence about the situation with Jablonski led the agency to conclude that Czajkowska lacked the requisite control to develop and direct EwelineB. *Id*. Finally USCIS explained that the change in April 2019, where Barlak transferred 5 percent of her ownership in the UK company to Czajkowska, was given little to no evidentiary weight because the assignment of interest document was submitted only in response to derogatory information in the NOID, and the evidence still showed ongoing problems with minority owner Jablonski. *Id*.; *see also* Dkt. 57 at 13 (this change was "yet again in an apparent attempt to 'fix' the deficiencies of the petition in response to the [NOID]."). Thus despite Czajkowska's formal title of "Managing Director", USCIS concluded that the totality of the evidence did not support a finding that the requirements of 8 C.F.R. § 214.2(e)(16) were satisfied, and the changes in ownership structure further supported the finding that EwelineB made material changes to the petition.

### D. Discretionary Benefit

Under 8 CFR § 214.1(c)(5), "[w]here an applicant or petitioner demonstrates eligibility for a requested extension, it may be granted at the discretion of USCIS."

EwelineB argues that USCIS should have granted its application to extend Czajkowska's period of authorized stay. EwelineB in effect asks the Court to re-weigh

13

USCIS's balancing of the equities and second guess the agency's judgment about a decision that is by definition discretionary. USCIS explained its decision in its August 2019 denial, weighing the factors and explaining how it reached its conclusion. Given that this Court's review is already narrow and deferential to the agency, the Court will not question the decision about this discretionary benefit.

**IV. Conclusion**

USCIS's determination that EwelineB did not satisfy the requirements of the E-2 treaty investor visa for beneficiary Czajkowska was not unsupported by substantial evidence or arbitrary and capricious. Accordingly, Plaintiff's motion for summary judgment [51] is denied and Defendants' motion for summary judgment [56] is granted. Judgment is entered in favor of Defendants. Civil case terminated.

E N T E R:

Dated: March 9, 2021

MARY M. ROWLAND
United States District Judge